UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**,

        Plaintiff,                      Case No.    1:19-cv-226

                                                        Hon. Paul L. Maloney

vs.

**MICHIGAN STATE UNIVERSITY;**
**ROBERT KENT,** in his individual and official capacity,
**RICK SCHAFER,** in his individual and official capacity,
**ARON SOUSA, M.D.,** in his individual and official capacity,
jointly and severally,

        Defendants.

_____/

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE**
**TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

      **NOW COMES** Plaintiff, John Doe, and states in support of his reply to Defendant's Response to Plaintiff's Motion for Preliminary Injunction pursuant to LCivR 7.2(a) & (c) as follows:

**I.**      **The suspension of John Doe is not a permissible interim measure under Michigan State University's Title IX policy; rather, the**

**suspension was imposed as a direct result of a violation of the due process to which John Doe was entitled.**

Michigan State University ("MSU") argues that the suspension imposed upon John Doe was simply an "interim measure" permitted by MSU's Relationship Violence and Sexual Misconduct Policy ("RVSMP") and the College of Human Medicine's ("CHM") Medical Student Rights and Responsibilities ("MSRR"). However, MSU's argument is based on the determination by MSU's investigators that John Doe had violated the RVSMP.

MSU, through the Office of Institutional Equity ("OIE") and their investigators, Kroll and Associates, Inc. ("Kroll"), made a finding by a preponderance of the evidence that John Doe had violated the RVSMP as to Jane Roe 1 and Jane Roe 2. CHM relied upon this finding in issuing the suspension of John Doe. Further, MSU relies upon this finding in opposing John Doe's motion for a preliminary injunction. What is ignored by Defendants is that the process by which the OIE and Kroll reached this finding was clearly unconstitutional. OIE and Kroll were prohibited from making a finding that John Doe was in violation of the RVSMP without first affording him an opportunity for a hearing and cross-examination of the Claimants. This finding would have never been made if John Doe had been afforded due process.

### A. The timing matters.

In order to provide John Doe with adequate due process under *Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) and *Doe v. Baum*, 903 F.3d

575 (6th Cir. 2018), MSU should have (1) conducted an investigation, (2) held a hearing where cross-examination of the Claimants was available, (3) made a finding based on the evidence at the hearing, and (4) if John Doe was found to have violated the RVSMP, imposed an appropriate sanction. In reality, the process has been: (1) conduct an investigation, (2) make a finding without a hearing, (3) impose discipline, and (4) offer John Doe a *Baum* hearing[1] without reversing the finding that has previously been made, or the sanction imposed.

MSU should never have reached a finding about whether John Doe was in violation of the RVSMP without first giving him the opportunity for a hearing and cross-examination of the Claimants under *Cincinnati* and *Baum*. The timing of MSU's findings, made prior to any hearing, justify Plaintiff's request for a preliminary injunction.

Defendants' response to the motion for preliminary injunction glosses over much of the timeline in this case. A more complete recitation of the timeline is contained within the Affidavit of John Doe (Exhibit 1). Defendants ignore that under the RVSMP in place at the time that the investigation began (*see* Def. Response Mot. Prelim. Injunction, Ex. 2, ECF No. 19, PageID.284-362), no hearing would be offered to John Doe. Defendants further fail to acknowledge that MSU and the individual Defendants had no intention of offering John Doe a hearing prior to expelling him from the University and CHM, despite Defendants' awareness of the rulings in *Cincinnati* and *Baum*.

---

[1] By way of example, MSU has stated that John Doe "is initially found to have raped one classmate and sexually assaulted a second…." Def. Response Mot. Prelim. Injunction. ECF No. 19, PageID.238. Given their litigation posture, this gives little hope for a fair and meaningful hearing.

OIE finished writing their report on February 7, 2019. OIE made findings against John Doe on that same day. Despite releasing a new RVSMP (*see* Def. Response Mot. Prelim. Injunction, Ex. 11, ECF No. 19, PageID.415-464) on February 8, 2019 which required that cases such as John Doe's would receive a hearing with cross-examination of the Claimants, no hearing was offered to John Doe. Instead, OIE dismissed John Doe from the University. On February 26, 2019, John Doe received a sanction letter imposing a sanction of dismissal from MSU. (*See* Sanction Letter, Exhibit 2).

At this point, the only thing standing between John Doe and permanent dismissal from MSU was an appeal, which was required to be filed within ten days. When John Doe's appeal was filed raising the issue of the lack of hearing and cross-examination, it became evident to MSU that they were at risk of facing litigation. At that point, they emailed John Doe on March 8, 2019 indicating, "I am writing to confirm that I have received your appeal. As you may be aware, MSU issued a revised Relationship Violence and Sexual Misconduct Policy on February 8, 2019…. Given the nature of your appeal, I understand that OIE and the Office of the General Counsel are reviewing your case to determine whether you and/or Claimant(s) will have the opportunity to request a hearing under the new policy. You can expect a communication from them soon. For now, this appeal is on hold." (*See* Bylenga email dated March 8, 2019, Exhibit 3). Nonetheless, John Doe could not attend classes while MSU decided whether to follow clearly established 6th Circuit precedent.

Defendants' presentation of the facts make it appear as though MSU had essentially planned to provide John Doe with a hearing all along. However, had John Doe not filed an appeal, no hearing would ever have been offered. He would have been dismissed from MSU and never provided with the required due process.

### B. The finding, reached in violation of John Doe's due process rights, caused the imposition of the interim suspension.

The reports regarding Jane Roe 2 and Jane Roe 1 were made to OIE on February 26, 2018 and February 28, 2018, respectively. (Final Investigation Report, p. 1, PageID.88). At that time, MSU and CHM both had within their knowledge the allegations being made against John Doe. A decision was made not to impose any interim sanction, including a suspension. The alleged incidents had taken place nearly two years earlier. John Doe had continued as a student since the date of the alleged incident, without any other allegations of inappropriate conduct under the RVSMP. MSU's delay has worked to its financial benefit and to John Doe's great financial harm.

From February 26, 2018, when the first complaint was filed with OIE until February 12, 2019, when John Doe was suspended by CHM, nothing had changed. MSU and CHM had been aware of the factual allegations against John Doe throughout the course of the investigation but took no action to suspend him pending the outcome. John Doe continued for nearly a year without incident while the investigation was pending. John Doe participated in his medical education and continued to pay tuition to MSU during this time. There was no indication that

John Doe had suddenly presented some new danger on February 12, 2019. John Doe had continued as a medical student, including attending courses and being placed on rotations with at least one of his accusers during the nearly three-year period following the alleged incident in 2016.

The key piece of evidence presented to the panel who decided to continue the suspension against John Doe was the Final Investigative Report issued by OIE, which made findings that John Doe was in violation of the RVSMP. (*See* Sousa letter dated February 13, 2019, Exhibit 4). The bulk of the meeting regarding imposition of the suspension was spent on the hearing panel reading the Final Investigative Report with those findings. (*See* Affidavit of John Doe, paragraph 27, Exhibit 1).

The only change that is evident between February 26, 2018 when the allegations are first reported and February 12, 2019 when John Doe is suspended by CHM are the conclusions contained within the Final Investigative Report. But for those conclusions, John Doe would have continued as a medical student at CHM. Given the erroneous procedure used to reach those conclusions, the interim suspension cannot be allowed to stand.

## CONCLUSION

Plaintiff requests that this Court enter a preliminary injunction permitting Plaintiff to continue as a medical student at Michigan State University's College of Human Medicine until this matter may be adjudicated at a hearing.

Respectfully submitted,

Dated: April 9, 2019

/s/ Keeley D. Blanchard
_____
Keeley D, Blanchard (P68661)
**BLANCHARD LAW**
Attorney for Plaintiff
309 S. Lafayette St., Ste 208
Greenville, MI 48838
(616) 773-2945
keeley@blanchard.law

**CERTIFICATION PURSUANT TO LCivR 7.2(b)(ii)**

The undersigned hereby certifies that, to the best of her knowledge, this Reply to Defendant's Response to Plaintiff's Motion for Preliminary Injunction in its entirety contains 1,537 words as checked with Microsoft Word's word counting function.

Respectfully submitted,

Dated: April 9, 2019

/s/ Keeley D. Blanchard
_____
Keeley D, Blanchard (P68661)
**BLANCHARD LAW**
Attorney for Plaintiff
309 S. Lafayette St., Ste 208
Greenville, MI 48838
(616) 773-2945
keeley@blanchard.law